### BANK OF TERREBONNE v. ENGERON (CHAUVIN et al., Interveners).

### No. 940.

Court of Appeal of Louisiana. First Circuit.
March 8, 1932.

Ellender & Ellender, of Houma, for appellant.

Harris Gagne, of Houma, for appellees.

## LE BLANC, J.

The plaintiff bank obtained an order for executory process on a note for $8,500, secured by mortgage on certain property in the city of Houma, parish of Terrebonne. The mortgage was executed by the defendant, Philogene Engeron, and, among other property, included a certain store building which is declared in the act to be owned by the mortgagor, but is situated on the property belonging to the estate of Mrs. Aurelia Boudreaux. Mrs. Aurelia Boudreaux was the wife by first marriage of Philogene Engeron, from which union five children were born, among them being Mrs. Mabel Engeron Chauvin, wife of Louis Chauvin, the eldest, Mrs. Edovia Engeron Boyett, wife of Clifford Boyett, and Thadeus Engeron. The two other children Vergas and Edith are said to be minors, and any interest they may have in this litigation is not put at issue.

Upon seizure having been made under the foreclosure instituted by the bank of all the property described in the mortgage, Mrs. Mabel Engeron Chauvin intervened, claim-

ing ownership with her sisters and brothers of the store building by reason of it being erected on the separate property of their mother which they had inherited from her. She obtained a preliminary injunction restraining the sale of her undivided one-fifth interest therein, after which she was joined by her brother Thadeus Engeron and her sister, Mrs. Edovia Engeron Boyett, in the same claim of ownership as to their respective one-fifth interest each. They, also, obtained a preliminary injunction, which in course of time, after trial on the merits, was perpetuated by the court and judgment rendered declaring the mortgage foreclosed on null and void in so far as it affected the undivided one-fifth interest of each of the interveners in the said building.

From that judgment, the Bank of Terrebonne has taken this appeal.

It is not disputed that the building was erected on property which did not belong to the mortgagor, it being the property of his children, all of whom, except one, were minors at the time it was constructed. The seizing creditor's main contention seems to be that its rights under the mortgage cannot be defeated as it was entered into in good faith with the mortgagor who declared to them that he was the owner of the building and had a lease agreement with his children to build on their property on condition that he pay taxes and insurance, and maintain the residence also situated thereon, and provide them with the necessities of life.

It is not pretended that such agreement was ever recorded, and, in view of the fact that in 1924, when the store building was erected, only one of the children was of age, all of the others being small children, according to the father, it is difficult to understand how the subject-matter and conditions of this so-called agreement could have formed the basis of a valid and binding contract.

Philogene Engeron, the father, testifies that it was agreed between himself and his oldest daughter Mabel, now Mrs. Chauvin, and his brother, whom he calls Theo, that he could put the building on the property and have the free use of it as well as of the property and the residence, until his youngest child would be twenty-one years of age, which would not be for ten years to come. There is not anything in the record to intimate that this brother of Engeron was the legal representative of the minor children, although he says that they never did anything without consulting him. Other testimony is to the effect that Engeron was to have the use of the building and lots of ground for ten years, at the expiration of which time the building would belong to the children. To use Engeron's own interpretation of the so-called agreement, we quote: "I didn't

think there would be any trouble, and I thought I would stay there that long for the use of the property, I thought the building would compensate them for the use of the property as I used the building."

◼ We believe the record shows that Engeron paid the taxes on all the property, and no doubt, for his own protection, he paid the insurance. Most probably, too, he furnished his children the necessities of life, as indeed it was his duty to do. All of those considerations, however, could not, as contended by counsel for the bank, make of the alleged agreement a lease. They endeavored to show by the testimony of the president of the bank that Mrs. Chauvin interviewed him on one occasion and demanded rent for the building; this, no doubt, in an effort to fortify their contention about a lease. But they failed in this effort, as the only interest Mrs. Chauvin, as well as her brother Thadeus, who accompanied her to the president's office, was in what they could expect in the way of rent if the bank or some stranger might ultimately become the owner of a building situated on their property.

◼ It is impossible for us to classify the pretended agreement under which this building was erected on these children's property. We know of no law under which it would be recognized as a contract in Louisiana. And still, we know of no law either which prohibits such an arrangement, and it is therefore not illegal. There being no positive law on the subject, we must, in interpreting it, look to natural law and reason and decide according to equity. Civ. Code art. 21.

◼ In fixing the status of this building as a piece of property, we have to take into consideration Engeron's relation to his children and what really was his intention when he erected it. Accepting his understanding of the arrangement that he was to have the use of it only, it looks to us to be evident that it was to be considered as the property of his children, else he would have had more than the mere use of it. With these considerations before us, and looking to article 464 of the Revised Civil Code which provides that "buildings or other constructions, whether they have their foundations in the soil or not, are immovable by their nature," we think there is little doubt left but that this building became part of the realty and was the property of the children. As such, it was impossible for the father to alienate it, and if he could not alienate it, he could not mortgage it. Article 3289, Revised Civil Code, prescribes that the following objects alone are susceptible of mortgage:

"1. Immovables subject to alienation, and their accessories considered likewise as immovables.

"2. The usufruct of the same description of property with its accessories, during the time of its duration.

"3. Ships and other vessels."

◼ We do not think that the pretended use of the building which the father claims to have retained constituted the usufruct mentioned under heading No. 2 of the foregoing article, and, indeed, we find in a supplemental brief filed by counsel for the bank that they are not contending that it is. Their whole contention seems to be that these interveners have mistaken their remedy; that they have no right to come into these proceedings by way of intervention and attack this mortgage. Were these third opponents merely asserting a privilege, there might be something in such contention, but here the claim set up is one of ownership which they had a right to urge under provisions of article 396 of the Code of Practice. It was limited by them to the specific property included in the mortgage which they claimed as their own. When, after having been established as such under the law and the evidence, we can see or think of no objection to having it so decreed and releasing it from effects of the mortgage, which, after all, is all that the judgment of the lower court purports to do.

We are of the opinion that the judgment appealed from is correct, and it is therefore affirmed.